UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMAD ABUSADEH,

    Plaintiff,

     v.

MICHAEL CHERTOFF,
Secretary of the Department of Homeland
Security, *et al.*

    Defendants.

Civil Action No. 06–2014 (CKK)

**MEMORANDUM OPINION**
(July 23, 2007)

    Plaintiff Mohammad Abusadeh filed the instant action pursuant to the Mandamus Act, 28

U.S. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative

Procedures Act ("APA"), 5 U.S.C. §§ 706 *et seq.*, to compel action on his dual applications for

naturalization and to replace an alien registration card.  At the time that Plaintiff filed his

Complaint, both applications were pending in the Houston office of United States Citizenship

and Immigration Services ("USCIS").  USCIS has since approved Plaintiff's application to

replace his alien registration card, such that Plaintiff's claims with respect to that application are

moot.  Defendants – Michael Chertoff, the Secretary of the Department of Homeland Security;

Emilio Gonzalez, the Director of USCIS; Sharon Hudson, the District Director of the Houston

USCIS office; and Robert Mueller, Director of the Federal Bureau of Investigation – have filed a

Motion to Dismiss, or in the Alternative, for Change of Venue.  Defendants argue that Plaintiff's

Complaint should be dismissed for lack of subject matter jurisdiction and lack of venue, or in the

alternative, should be transferred to the United States District Court for the Southern District of

Texas, Houston Division, where Defendants assert venue properly lies.

Plaintiff has filed a Response Opposing Defendants' Motion, to which Defendants have replied. Upon consideration of the parties' briefings, the relevant case law, and the entire record herein, the Court shall grant Defendants' motion to transfer venue. In light of the transfer of venue, the Court shall not address the substance of Defendants' motion to dismiss but shall deny that motion without prejudice so that Defendants may refile it, if appropriate, upon transfer to the Southern District of Texas, Houston Division.

## I. BACKGROUND

Plaintiff, Mohammad Abusadeh is a 35 year-old native of Kuwait and a citizen of Jordan, who is a lawful permanent resident of the United States and resides in Houston, Texas. Pl.'s Compl. ¶¶ 5, 7. Plaintiff first applied for naturalization on August 13, 1997, but that application was denied because Plaintiff had two arrests for which he failed to comply with the conditions of his probation. Pl.'s Resp. Opposing Defs' Mot. to Dismiss, or in the Alternative, for Change of Venue (hereinafter "Pl.'s Opp'n"), Ex. BC (10/17/00 Abusadeh Decision) (concluding that a "record of 2 (two) arrests, one of which occurred within the statutory period, fails to support a finding of good moral character").[1] Plaintiff filed a second application for naturalization on April 12, 2004, and was interviewed regarding his application on August 17, 2004. Pl.'s Compl.

---

[1] The Court notes the materials outside the pleadings to which the Court cites are not essential to the Court's conclusion that this action should be transferred to the Southern District of Texas. However, on a motion to dismiss for lack of venue, a court may consider material outside the pleadings. *See Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4, 67 S. Ct. 1009, 91 L. Ed. 1209 (1947)). The Court therefore provides for the sake of background certain pertinent factual information gleaned from documents attached to Defendants' Motion to Dismiss and to Plaintiff's Opposition.

¶¶ 8-9.  Following his interview, Plaintiff was informed that he had passed the English language, United States history, and government tests, but that a decision about his application could not be made pending a security check.  Pl.'s Compl. ¶ 9, Ex. 2 (Results of Naturalization Interview). Plaintiff has since made inquiries, through counsel, to find out the status of his naturalization application and has been told that security checks are pending.  Pl.'s Compl. ¶ 10, Ex. 3 (11/22/04 and 3/8/05 e-mails to Houston USCIS office).

Plaintiff's lawful permanent resident card expired on August 22, 2005.  Pl.'s Compl. ¶ 13, Ex. 4 (Abusadeh Resident Alien Card).  On July 27, 2005, Plaintiff timely filed an application to replace his lawful permanent resident card and, on September 29, 2005, attended the required biometrics appointment corresponding to his application.  Pl.'s Compl. ¶¶ 14-15.  As of the filing of his November 27, 2006 Complaint in this action, Plaintiff had not received his replacement card and, as a result, had not been able to travel abroad to visit his ill father in Jordan.  *Id.* ¶¶ 16-19; *see also* Pl.'s Opp'n, Ex. I (Medical report for Plaintiff's father).  It appears that USCIS thereafter approved Plaintiff's application to replace his lawful permanent resident card on February 6, 2007.  *See* Defs' Mot. to Dismiss or, in the Alt., for Change of Venue (hereinafter "Defs' Mot.") at 18.  Plaintiff's Opposition to Defendants' Motion to Dismiss does not deny that his application to replace his alien registration card has been approved, and the Court notes that Defendants have provided a print-out of the USCIS Interim Case Management Solution Case History for Plaintiff, which indicates that Plaintiff's application to replace his alien registration card was approved on February 6, 2007.  *See* Defs' Mot., Ex. 3 (Abusadeh Document Production Status Case History).  Accordingly, it appears that Plaintiff's claims with respect to his

application to replace his lawful permanent resident card are moot.[2]

On August 17, 2006, Plaintiff filed a complaint in the U.S. District Court for the Southern District of Texas, Houston Division, naming as defendants the same four officials that Plaintiff names as Defendants in this matter.  Pl.'s Opp'n Ex. A (Complaint, *Abusadeh v. Chertoff, et al.*, Misc. No. H-06-0337 (S.D.Tex. Aug. 17, 2006).  Plaintiff filed his complaint in the Southern District of Texas under the Immigration and Nationality Act § 336(b), 8 U.S.C. § 1447(b), and the APA, asserting that more than 120 days had passed since Plaintiff's interview regarding his naturalization application and no decision had been made on his application.  *Id.*  As such, Plaintiff applied to the Southern District of Texas for a hearing on the matter, pursuant to 8 U.S.C. § 1447(b).  *Id.*  However, on August 23, 2006, Judge Kenneth M. Hoyt *sua sponte* remanded Plaintiff's case to the USCIS for lack of jurisdiction, finding that "[i]n the case at bar, the mandatory national security FBI name check process has not been completed," and that therefore "exhaustion of the administrative process has not been completed and the 120-day period has not been triggered."  Pl.'s Opp'n, Ex. A (*Abusadeh v. Chertoff, et al.*, Misc. No. H-06-0337, Order for Remand (S.D.Tex. Aug. 23, 2006)).

Thereafter, on November 27, 2006, Plaintiff filed the instant action pursuant to the Mandamus Act, 28 U.S.C. § 1361, the Declaratory Judgment Act, 28 U.S.C. § 2201, and the Administrative Procedures Act, 5 U.S.C. §§ 706 *et seq.*, again naming the same four officials as Defendants.  Pl.'s Compl. ¶ 1.  Plaintiff's Complaint in this action alleges that Defendants have

---

[2] *See County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969).

breached a duty to Plaintiff by failing to finish adjudicating his naturalization application and application to replace a permanent resident card within a reasonable time, and that Defendants' actions have denied Plaintiff "peace of mind,"and "the benefits of citizenship." *Id.* ¶¶ 25-29. Plaintiff therefore asks this Court to compel action on his applications through an affirmative injunction, declaratory judgment, and a writ of mandamus, and to hold unlawful and set aside agency action that Plaintiff alleges has been "unreasonably delayed and unlawfully withheld." *Id.* ¶¶ 30-37.

On February 26, 2007, Defendants filed a Motion to Dismiss, or in the Alternative, for Change of Venue. *See* Defs' Mot. After a number of extensions, Plaintiff filed his Response Opposing Defendants' Motion to Dismiss, or in the Alternative, for Change of Venue, on May 2, 2007. *See* Pl.'s Opp'n. Defendants filed their Reply to Plaintiff's Response on June 4, 2007. *See* Defs' Reply.

## II. LEGAL STANDARD

Defendants argue that venue in this case is improper in the District of Columbia, and that this Court should therefore dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(3). When a case is filed in the wrong federal judicial district, the district court in which the action is filed "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In considering a motion to dismiss for lack of venue, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, No. Civ. A. 04-01733, 2006 WL 1805607, * 1 (D.D.C.

5

Jun. 29, 2006) (citations and internal quotations omitted).

Defendants alternatively argue that this Court should exercise its discretion to transfer this case to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court is afforded broad discretion to decide whether transfer from one jurisdiction to another is proper under 28 U.S.C. § 1404(a). *SEC v. Savoy Indus. Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). The decision to transfer is made by an "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964).

The Court must therefore initially determine whether venue in the District of Columbia is proper for Plaintiff's claims, before turning to the threshold question under 28 U.S.C. § 1404(a) of whether this action "might have been brought" in the Southern District of Texas. *Id.* at 616. In an action brought against an officer or employee of the United States, venue is covered by 28 U.S.C. § 1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).

Even if venue is proper in the Southern District of Texas, the Court may transfer a case only if the balance of private and public interests weighs in favor of transfer. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). Private interest considerations include: (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendant; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citing James W. Moore & Brett A. Ringle, *Federal Practice* ¶ 0.345[5] (2d Ed. 1995); 15 Charles A. Wright et al., *Federal Practice and Procedure* §§ 3848-53 (2d ed. 1986)); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). However, the deference normally given to a plaintiff's choice of forum is "lessened when the plaintiff's forum choice 'lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter.'" *S. Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2004) (citing *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979)). The plaintiff's choice of forum is also "conferred less deference by the court when [it] is not the plaintiff's home forum." *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981))

The public interest factors include: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Jumara*, 55 F.3d at 879-80 (citing Moore & Ringle, *supra*, ¶ 0.345[5]; Wright et al., *supra*, §§ 3854; *Trout Unlimited,* 944 F. Supp. at 16.

7

### III.  DISCUSSION

Defendants argue that venue for this action is improper in the District of Columbia and that this case should therefore be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, transferred to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a).  *See* Defs' Mot. at 3-10.  As a second alternative, Defendants argue that this case should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or remanded to USCIS for the completion of the mandatory background checks, pursuant to 8 U.S.C. § 1447(b).  *Id.* at 10-17.  The Court concludes that, in the interest of justice, this case should be transferred to the Southern District of Texas and therefore grants Defendants' motion to transfer venue.  As a result, the Court does not reach the merits of Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).

Plaintiff's Complaint alleges that venue is proper in the District of Columbia because Defendants Department of Homeland Security, United States Citizenship and Immigration Services, and the Federal Bureau of Investigation "reside" in Washington, D.C.  Pl.'s Compl. ¶ 4. Defendants dispute this assertion, relying on case law from this Circuit that "courts in the [District of Columbia] must examine challenges to . . . venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia[, because by] naming high government officials as defendants, a plaintiff could bring a suit here that properly should be pursued elsewhere."  *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993)."[3]  The

---

[3] Plaintiff argues that *Cameron* is inapposite because it involved a *Bivens* action, for which venue is not determined by 28 U.S.C. § 1391(e), and because the *Cameron* court noted that venue would have been proper in the District of Columbia on Plaintiff's claim for injunctive relief, which had become moot.  Pl.'s Opp'n at 8-9 (citing *Cameron*, 983 F.3d at 256, 257 n.2). However, *Cameron* states a broad principle that courts in this Circuit must be wary of efforts to

principle that Defendants advocate is an important one. However, it is one ordinarily considered

by courts in determining whether to transfer an action pursuant to 28 U.S.C. §1404(a), and not

the sole principle relied upon in finding a lack of venue in the District of Columbia under Federal

Rule of Civil Procedure 12(b)(3). *See, e.g., Joyner v. District of Columbia*, 267 F. Supp. 2d 15,

20-21 (D.D.C. 2003). Moreover, as noted above, pursuant to 28 U.S.C. § 1391(e), venue is

proper in the District where: (1) a defendant in the action resides, (2) a substantial part of the

events or omissions giving rise to the claim occurred, or (3) the plaintiff resides if no real

property is involved in the action. 28 U.S.C. § 1391(e). Thus, on the face of the venue statute, it

appears that venue properly lies in the District of Columbia because three of the four named

Defendants in this case "reside" in the District of Columbia.

Even if venue is proper in the District of Columbia, the Court may nevertheless transfer

this case to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1404(a),

which states that "[f]or the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have

been brought." 28 U.S.C. § 1404(a). The Court therefore turns to considering Defendants'

motion to transfer venue.

In so doing, the Court first addresses the threshold question of whether this action "might

have been brought" in the Southern District of Texas. *Van Dusen*, 376 U.S. at 616, 845 S. Ct.

---

improperly manufacture venue in the District of Columbia, *see Cameron*, 983 F.3d at 256, and in
no way limits that principle to *Bivens* actions. Moreover, courts in this Circuit have applied the
same principle in suits where venue is controlled by 28 U.S.C. § 1391(e). *See Thomas v. Dep't
of Defense*, Civ. A. No. 03-2483, 2006 WL 1890009, at *4-5 (D.D.C. Jul. 7, 2006). In any event,
Plaintiff's argument is of no practical import, because the Court does not conclude that venue is
improper in the District of Columbia, but rather that this case should be transferred to the
Southern District of Texas in the interest of justice.

805.  Here, venue is clearly proper in the Southern District of Texas because Defendant Hudson, as District Director of the USCIS Houston office resides in that District, and because Plaintiff himself resides there as well.  Furthermore, as described in Plaintiff's Complaint, almost all of the "activity giving rise to [Plaintiff's] cause of action" occurred in the Southern District of Texas.  Specifically, Plaintiff's Complaint alleges that he resides in Houston, Texas, that he filed an application for naturalization and was thereafter interviewed at the USCIS office in Texas, that he was advised following his interview that a decision on his application could not be made pending a security check, and that he has since been told by the Houston USCIS office that security checks are still pending.  Pl.'s Compl. ¶¶ 5, 8-10; Ex. 1 (6/17/04 Notice of Naturalization Interview); Ex. 2 (Results of Naturalization Interview); Ex. 3 (11/22/04 and 3/8/05 e-mails to Houston USCIS office).  Indeed, the conclusion that venue for this action is proper in the Southern District of Texas is strengthened by the fact that Plaintiff filed his previous action – which contained the same factual allegations but proffered different legal theories – in that District, and only brought suit here after being denied the relief he sought in the Southern District of Texas.

Before the Court can determine that Plaintiff's Complaint should be transferred to the Southern District of Texas however, the Court must consider the relevant private and public interest factors. *Greater Yellowstone Coalition*, 180 F. Supp. 2d at 127.  Here, Plaintiff's choice of forum is entitled to less than ordinary deference as Plaintiff is not a resident of the District of Columbia and this action bears no "meaningful ties" to the District of Columbia.  *S. Utah Wilderness Alliance*, 315 F. Supp. 2d at 86.  Indeed, "venue is only proper in the District of Columbia 'if sufficient activity giving rise to the plaintiffs' cause of action' occurred here," and

based on Plaintiff's Complaint it appears that very little, if any, activity giving rise to Plaintiff's cause of action occurred in the District of Columbia. *Bertha El-Bey v. United States*, No. Civ. A. 04-1231, 2004 WL 2418306 (D.D.C. Sept. 28, 2004) (citing *Franz v. United States*, 591 F. Supp. 374, 378 (D.D.C. 1984)). As noted above, Plaintiff's Complaint alleges that Plaintiff, a resident of the Southern District of Texas, applied for naturalization in that District, was interviewed in connection with his application in that District, and has since communicated with the USCIS office in that District regarding his application. Pl.'s Compl. ¶¶ 5, 8-10; Ex. 1 (6/17/04 Notice of Naturalization Interview); Ex. 2 (Results of Naturalization Interview); Ex. 3 (11/22/04 and 3/8/05 e-mails to Houston USCIS office).

Most significantly perhaps, Plaintiff's Complaint – which asserts that the amount of time for which his application for naturalization has been pending "is excessive and far beyond normal processing times for the Houston USCIS district," Pl.'s Compl. ¶ 26 – asks this Court to issue an order "requiring Defendants to immediately finish adjudicating Plaintiff's application for naturalization," *id.* ¶ 37(a). As Defendants assert in their Motion to Dismiss, USCIS "normally conducts all of its adjudication of applications for naturalization and applications to replace an alien registration card locally." Defs' Mot. at 4, 8; *see also* Defs' Reply at 3-4. Furthermore, as Defendant Hudson, District Director of the USCIS Houston Office, explains in her Supplemental Declaration filed in support of Defendants' Reply, decisions about whether to expedite a particular application for naturalization are made by the local USCIS offices based on their individual criteria. Defs' Reply, Ex. (6/1/07 Supp. Decl. of Sharon A. Hudson) ¶¶ 5-6 (indicating that there are "approximately 233 applicants for either adjustment of status or for naturalization who filed applications . . . .prior to [Plaintiff's application], and who have

therefore been waiting longer than [Plaintiff] for their FBI name check.").  As such, the action

that Plaintiff seeks this Court to compel is one that will occur not in the District of Columbia, but

rather in Houston, Texas.

Plaintiff attempts to argue that venue is nevertheless proper in the District of Columbia

because the Defendants in this case "are the federal government officials who are the decision-

makers in immigration matters."  Pl.'s Opp'n at 9.  Plaintiff's argument is true in some respects –

at the highest level, the Secretary of the Department of Homeland Security, Director of USCIS,

and Director of the FBI are important decision-makers "in immigration matters."  However, to be

clear, Plaintiff's Complaint does not assert a general, broad-based challenge to immigration

policies or regulations.  Instead, it focuses solely on Plaintiff's application for naturalization and

asks simply that this Court require Defendants to immediately finish adjudicating *his* application.

With respect to Plaintiff's particular application for naturalization, then, the relevant decision-

makers are not Secretary Chertoff, Director Gonzalez, and Director Mueller, but rather Director

Hudson and the other decision-makers at the USCIS office in Houston, Texas.  Indeed, as courts

in this District have found, if "'the only real connection [the] lawsuit has to the District of

Columbia is that a federal agency headquartered here is charged with generally regulating and

overseeing the [administrative] process,'" venue "is not appropriate in the District of Columbia."

*See, e.g., Shawnee Tribe*, 298 F. Supp. 2d at 25-26 (quoting *DeLoach v. Phillip Morris Co.*, Inc.,

132 F. Supp.2d 22, 25 (D.D.C. 2000)).

Plaintiff also argues that venue is proper in the District of Columbia because the FBI is

"the Defendant that is conducting the name check that is pending as of the time of this lawsuit."

*Id.* at 9.  Plaintiff posits that because his two prior criminal convictions are no longer a bar to

naturalization, "[i]t is apparent that before adjudicating this petition, the Defendants are simply awaiting the results of the FBI name check." *Id.* at 10. Even if this is true, however, it is clear from the record that the FBI simply forwards the results of its name check to the local USCIS office for review as part of its ordinary adjudication process. *See* Defs' Mot., Ex. D (2/15/07 Decl. of Michael A. Cannon, Section Chief of the National Name Check Program Section at FBI Headquarters) ¶ 21 ("It is important to note that the FBI does not adjudicate applications . . . . If appropriate, the FBI generally provides a summary of available information to USCIS for its adjudication process."); *see also* Def.'s Mot., Ex. B-3 (Printout of "National Name Check Program–Frequently Asked Questions" website, stating "the FBI *does not* adjudicate the name check requests, but only provides available information to a requesting agency for its adjudication process.") (emphasis added). That the FBI, in Washington, D.C., may play a role in the processing of Plaintiff's application for naturalization therefore does not alter the fact that the ultimate decision on Plaintiff's application for naturalization – the sole decision challenged in Plaintiff's Complaint – will be made at the USCIS office Houston, Texas.[4]

In a further attempt to ground venue in the District of Columbia, Plaintiff's Opposition purports to broaden his claims, asserting that the "gravamen of [his] complaint is that Defendants have failed to act to clear a backlog of FBI name checks that has existed for over 10 years," such that the Court "is reviewing whether the agencies have unreasonably delayed the processing of

---

[4] The Court notes that in his February 15, 2007 Declaration, Michael A. Cannon, Section Chief of the National Name Check Program Section, states that the "results of the name check will be forwarded to USCIS in Washington. Defs' Mot., Ex. D (2/15/07 Cannon Dec.) ¶ 22; *see also* Pl.'s Opp'n at 16-17 (noting Mr. Cannon's statement). However, even if the results of Plaintiff's FBI name check are initially sent to USCIS in Washington, D.C. en route to Houston, Texas, it appears that the ultimate decision on Plaintiff's application will be made in Houston.

the application" rather than merely a "local dispute." Pl.'s Response at 13-14. Plaintiff's

Complaint simply does not assert such a challenge. While Plaintiff's Complaint is brought in

part under the Administrative Procedures Act, 5 U.S.C. § 706, and requests "that the Court

compel agency action unreasonably, delayed and unlawfully withheld . . . that is arbitrary,

capricious, an abuse of discretion, not accordance with law, and without observance of procedure

required by law," Pl.'s Compl. ¶ 25, it contains no factual allegations in support of that claim.

Instead, as noted above, Plaintiff's Complaint focuses solely on Plaintiff's application for

naturalization and asks that this Court require Defendants to immediately finish adjudicating *his*

application. *Id.* ¶¶ 9-12, 26-37. Plaintiff does not frame his Complaint as a broad challenge to

immigration policies, and cannot simply add factual allegations sufficient to sustain a claim

under the APA via his Opposition. "It is axiomatic that a complaint may not be amended by the

briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. v. United Postal

Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citing *Coleman v. Pension Benefit Guar. Corp.*,

94 F. Supp. 2d 18, 24 n. 8 (D.D.C. 2000)). Furthermore, the Court notes that Plaintiff has neither

offered to amend nor moved to amend his Complaint to add the factual support necessary for his

APA claim. *See Belizan v. Hershon*, 434 F.3d 579, 582-83 (D.C. Cir. 2006) ("a request for leave

[to amend] must be submitted in the form of a written motion.").

It is therefore clear that Plaintiff's choice of forum is entitled to significantly less-than-

ordinary deference in light of the tangential connection between Plaintiff's Complaint and

Washington, D.C., that Defendant prefers to litigate this mater in the Southern District of Texas,

and that Plaintiff's claim arose in the Southern District of Texas, rather than in Washington, D.C.

In addition, the interests of convenience seem to favor transfer to the Southern District of Texas.

Plaintiff asserts that this case does not involve a determination of a factual controversy, requiring "witnesses and a finder of fact," because "there are no facts for the Court to determine on the application for naturalization."  Pl.'s Opp'n at 13.  However, Plaintiff's Complaint seeks expedition of a decision that will be made in Houston, Texas.  Therefore, to the extent that any relevant witnesses and documents exist, they will be the individuals involved in making the ultimate decision on Plaintiff's application for naturalization as well as the documents and records related to his application, all of which are located in the Southern District of Texas.

Finally, the Court considers the public interests weighing in favor of transfer to the Southern District of Texas.  As Defendant notes, this action concerns the application of federal law, with which the United States District Court for the Southern District of Texas, Houston Division is as familiar as this Court.  Defs' Mot. at 9.  Furthermore, the Court has not been presented with evidence of the relative congestion of the calendars of the Southern District of Texas and this District.  While neither of these factors therefore alters the balance in favor of transfer, it does appear that the Southern District of Texas may have a superior interest in addressing the instant controversy because "[t]here is a local interest in having localized controversies decided at home."  *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 70 (D.D.C. 2003) (quoting *Adams v. Bell*, 228 U.S. App. D.C. 375, 711 F.2d 161, 167 (D.C. Cir. 1983)).  "This rationale applies to controversies involving federal decisions that impact the local environment, *and to controversies requiring judicial review of an administrative decision*."  *Id.* (emphasis added).

While Plaintiff protests describing this matter as a "local controversy," this case ultimately involves a determination of whether the USCIS Houston office should be compelled to

expedite processing of Plaintiff's application for naturalization. As District Director Hudson

explains in her Supplemental Declaration, decisions about whether to expedite a particular

application for naturalization are made by the local USCIS offices based on their individual

criteria, and there are "approximately 233 applicants for either adjustment of status or for

naturalization . . . [who have] been waiting longer than [Plaintiff] for their FBI name check."

Defs' Reply, Ex. (6/1/07 Supp. Decl. of Sharon A. Hudson) ¶¶ 5-6. Insofar as Plaintiff seeks a

court to become involved in dictating the priorities of a local USCIS office, it appears that the

United States Court for the Southern District of Texas is better positioned to do so, and may have

a superior interest in doing so.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's motion to transfer

venue and shall deny without prejudice Defendants' motion to dismiss so that Defendants may

refile that motion, if appropriate, upon transfer to the Southern District of Texas, Houston

Division. An appropriate Order accompanies this Memorandum Opinion.


Date:   July 23, 2007



_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

16